Appeal No. 2021-1638

# United States Court of Appeals

## *for the*

# Federal Circuit

KANNUU PTY. LTD.,

*Plaintiff-Appellant,*

v.

SAMSUNG ELECTRONIC CO., LTD., and
SAMSUNG ELECTRONICS AMERICA INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the Southern District of New
York in No. 1:19-cv-04297-ER, Judge Edgardo Ramos

## BRIEF FOR DEFENDANTS-APPELLEES

David M. Cooper
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Kevin P.B. Johnson
Victoria F. Maroulis
QUINN EMANUEL URQUHART & SULLIVAN
LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Marissa Ducca
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1300 I Street NW, Suite 900
Washington DC 20005
(202) 538-8000

*Counsel for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung
Electronics America, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2021-1638 |
| **Short Case Caption** | Kannuu Pty. Ltd. v. Samsung Electronics Co., Ltd. |
| **Filing Party/Entity** | Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/19/2021

Signature:     /s/ Victoria F. Maroulis

Name:     Victoria F. Maroulis

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Electronics Co., Ltd. | | Samsung Electronics Co., Ltd. is a publicly held corporation. |
| | | It has no parent companies, and no other publicly held company owns 10% or more of its stock. |
| Samsung Electronics America, Inc. | | Samsung Electronics America, Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd. |
| | | No other publicly held company owns 10% or more of its stock. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Joseph Milowic III | QUINN EMANUEL URQUHART & SULLIVAN LLP | 51 Madison Ave., 22nd Floor New York, NY 10010  (212) 849-7000 |
| | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Samsung Electronics America, Inc. v. Kannuu Pty, Ltd. IPR2020-00737 (PTAB) | Samsung Electronics America, Inc. v. Kannuu Pty, Ltd. IPR2020-00738 (PTAB) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ............................................................... ii

STATEMENT OF RELATED CASES ................................................. xi

PRELIMINARY STATEMENT ......................................................... 1

COUNTERSTATEMENT OF THE ISSUES ........................................ 3

COUNTERSTATEMENT OF THE CASE ........................................... 3

SUMMARY OF ARGUMENT ........................................................... 7

ARGUMENT ................................................................................... 10

I.    THE DISTRICT COURT CORRECTLY DENIED KANNUU'S
      MOTION FOR A PRELIMINARY INJUNCTION ..................................... 11

      A.    The District Court Correctly Concluded That Kannuu Failed To
            Show A Likelihood Of Success On The Merits .................................. 11

            1.    IPRs Do Not Arise Out Of And Are Not Related To The
                  NDA ........................................................................... 11

            2.    IPRs Do Not Arise Out Of And Are Not Related To
                  Transactions Contemplated By The NDA ............................. 15

      B.    The District Court Correctly Concluded That Kannuu Will
            Suffer No Irreparable Harm Absent An Injunction ........................... 21

      C.    The District Court Correctly Concluded That The Balance of
            Hardships Favors Samsung ............................................................ 26

      D.    The District Court Correctly Concluded That The Public
            Interest Favors Samsung ............................................................... 27

II.   AN AGREEMENT NOT TO PARTICIPATE IN IPR
      PROCEEDINGS WOULD REQUIRE A CLEAR STATEMENT OF
      INTENT TO WAIVE SUCH PROCEEDINGS, WHICH IS ABSENT
      HERE ........................................................................................... 28

A.    Based On Federal Patent Policy, A Waiver Of A Challenge To Validity Is Enforceable Only If There Is A Clear Statement Of Such A Waiver ...................................................................................29

B.    The Clear-Statement Rule Applies To A Purported Waiver Of Participation In IPR Proceedings Given The Strong Public Interests In Allowing Those Proceedings ...........................................31

C.    Kannuu Cannot Refute The Strong Public Policy Interest In Allowing IPRs ...................................................................................35

D.    The FSC Contains No Clear Statement Of A Waiver Of The Right To Participate In IPR Proceedings ...........................................38

CONCLUSION ...................................................................................38

CERTIFICATE OF COMPLIANCE.......................................................41

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allianz Global Investors Gmbh v. Bank of Am. Corp.*,
    463 F. Supp. 3d 409 (S.D.N.Y. 2020) ...........................................................12

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
    571 U.S. 49 (2013).......................................................................................37

*Baseload Energy, Inc. v. Roberts*,
    619 F.3d 1357 (Fed. Cir. 2010) ....................................................... 11, 30, 31

*Benisek v. Lamone*,
    138 S. Ct. 1942 (2018)..................................................................................10

*Cohesive Techs., Inc. v. Waters Corp.*,
    543 F.3d 1351 (Fed. Cir. 2008) ....................................................................14

*Cuozzo Speed Techs., LLC v. Lee*,
    136 S. Ct. 2131 (2016)................................................................. 21, 23, 33, 36

*Discover Growth Fund v. 6D Glob. Techs. Inc.*,
    No. 15-CV-7618 PKC, 2015 WL 6619971 (S.D.N.Y. Oct. 30, 2015) .........16

*Diversey Lever, Inc. v. Ecolab, Inc.*,
    191 F.3d 1350 (Fed. Cir. 1999) ....................................................................30

*Dodocase VR, Inc. v. Merchsource, LLC*,
    767 F. App'x 930 (Fed. Cir. 2019) ....................................................... passim

*Ecolab, Inc. v. Paraclipse, Inc.*,
    285 F.3d 1362 (Fed. Cir. 2002) ............................................................ 30, 38

*Ford Motor Co. v. Versata Software, Inc.*,
    No. 15-11624, 2016 WL 6650380 (E.D. Mich. Nov. 10, 2016) ..................24

*Foster v. Hallco Mfg. Co.*,
    947 F.2d 469 (Fed. Cir. 1991) ......................................................... 30, 31, 38

*General Protecht Group., Inc. v. Leviton Mfg. Co., Inc.*,
    651 F.3d 1355 (Fed. Cir. 2011) ................................................. 22, 23, 27, 37

*Glaxo Group Ltd. v. TorPharm, Inc.*,
    153 F.3d 1366 (Fed. Cir. 1998) ....................................................................29

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ...........................................................................21

*Granite Management Corp. v. United States*,
   416 F.3d 1373 (Fed. Cir. 2005) ..................................................29

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   957 F.3d 1256 (Fed. Cir. 2020) ..................................................32

*Idaho Potato Comm'n v. M & M Produce Farm & Sales*,
   335 F.3d 130 (2d Cir. 2003) ......................................................31

*IMO Indus., Inc. v. Sierra Int'l, Inc.*,
   No. CIV. A. 18783, 2001 WL 1192201 (Del. Ch. Oct. 1, 2001) .......... 16, 17

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ..................................................29

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004) ..................................................15

*Lear, Inc. v. Adkins*,
   395 U.S. 653 (1969)................................................ 30, 31, 34, 37

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972).....................................................................37

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
   812 F.3d 1284 (Fed. Cir. 2015) ............................................ 32, 33

*Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*,
   No. 2:19-cv-04980-AB-FFMx, 2020 WL 1032395 (C.D. Cal. Jan. 23,
   2020) ......................................................................................19

*Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*,
   No. 2:19-cv-04980-ABF, 2019 WL 7205896 (C.D. Cal. Sept. 30,
   2019) ......................................................................................25

*NuCurrent Inc. v. Samsung Elecs. Co.*,
   No. 19-CV-798(DLC), 2019 WL 2776950 (S.D.N.Y. July 2,
   2019) .......................................................................... 20, 21, 22

*NuCurrent, Inc. v. Samsung Elecs. Co.*,
   No. 6:18-CV-51-JRG-KNM, 2018 WL 7821099 (E.D. Tex. Dec. 26,
   2018) ............................................................................ 12, 13, 19

*NuCurrent, Inc. v. Samsung Elecs. Co.*,
   No. 6:18-CV-51-JRG-KNM, 2018 WL 8244727 (E.D. Tex. July 12,
   2018) ......................................................................................20

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018).......................................................... 21, 33

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) .......................................................11

*In re Procter & Gamble Co.*,
   749 F.3d 1376 (Fed. Cir. 2014) .................................................25

*Rexnord Industries, LLC v. Kappos*,
   705 F.3d 1347 (Fed. Cir. 2013) .................................................29

*Richard Feiner & Co. v. Turner Entm't Co.*,
   98 F.3d 33 (2d Cir. 1996) ..........................................................24

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) .......................................................21

*Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*,
   No. 2:19-CV-00027-JRG, 2019 WL 2904756 (E.D. Tex. July 5, 2019) ......12

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) .........................................................24

*Senju Pharm. Co. v. Metrics, Inc.*,
   96 F. Supp. 3d 428 (D.N.J. Mar. 30, 2015) .................................25

*Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*,
   366 F. Supp. 3d 516 (S.D.N.Y. 2018) .........................................12

*Synopsis, Inc. v. Mentor Graphics Corp.*,
   814 F.3d 1309 (Fed. Cir. 2016) .................................................13

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015) ...................................................10

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) .................................................19

*ThermoLife Int'l LLC v. GNC Corp.*,
   922 F.3d 1347 (Fed. Cir. 2019) .................................................10

*Wilson v. Dantas*,
   40 Misc. 3d 1236(A), 977 N.Y.S.2d 671, 2013 WL 4747197 (N.Y.
   Sup. 2013)..................................................................................16

*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999) .................................................15

*Wreal, LLC v. Amazon.com*,
   840 F.3d 1244 (11th Cir. 2016) .................................................24

*Yee v. City of Escondido*,
   503 U.S. 519 (1992).....................................................................29

## <u>Statutory Authorities</u>

28 U.S.C. § 1404(a) .......................................................................20

35 U.S.C. § 6 ................................................................................ 32

35 U.S.C. § 102 ............................................................................. 4

35 U.S.C. § 103 ............................................................................. 4

35 U.S.C. § 311 ........................................................................... 32

35 U.S.C. § 311(a) ....................................................................... 33

35 U.S.C. § 314 ........................................................................... 25

35 U.S.C. § 314(a) ......................................................................... 5

35 U.S.C. § 316 ........................................................................... 32

35 U.S.C. § 317(a) ....................................................................... 33

35 U.S.C. § 318 ........................................................................... 32

## **STATEMENT OF RELATED CASES**

Defendants-Appellees identify the following cases as related: *Samsung Electronics America, Inc. v. Kannuu Pty., Ltd*., IPR2020-00737 (PTAB); and *Samsung Electronics America, Inc. v. Kannuu Pty., Ltd*., IPR2020-00738 (PTAB).

## PRELIMINARY STATEMENT

The district court correctly held that Kannuu is not entitled to a preliminary injunction that would prohibit Samsung from participating in properly instituted inter partes review ("IPR") proceedings. Kannuu's proposed injunction rests on a forum selection clause ("FSC") in an agreement between Kannuu and Samsung. But in stark contrast with the cases Kannuu cites applying an FSC to an invalidity proceeding at the Patent Office, the agreement here was not to license patents, which has an obvious relationship to claims regarding the validity of those patents. Rather, the agreement here is a Non-Disclosure Agreement ("NDA"), which expressly states that it creates no rights (and thus no obligations) with respect to any patents. Thus, this Court should affirm the district court's order denying a preliminary injunction.

Kannuu's attempts to contort the language of the FSC to apply to claims of patent invalidity in an IPR proceeding are meritless. Kannuu relies on the supposed breadth of the words "relating to" in the FSC, but ignores what the proceedings must "relate to": the NDA and the transactions contemplated therein. As the district court correctly held, the NDA specifically contemplates and is concerned with allowing the parties to freely exchange confidential information without fear of theft or disclosure of that information by the other party. Having nothing to do with the validity of patents, the existence of the NDA is irrelevant to the IPR proceedings, and indeed, Kannuu has conceded below that the IPR proceedings will have "no

impact on the breach of contract issues." Appx8.  The IPR proceedings therefore do not fall within the scope of the FSC.

The district court also acted within its discretion in finding that Kannuu failed to show irreparable harm in the absence of an injunction, or that the balance of hardships or the public interest favors an injunction.  There is no harm, let alone irreparable harm, to Kannuu from allowing the PTAB to decide whether Kannuu's patents are invalid.  That is especially clear here given that Kannuu delayed seeking an injunction until after institution of the IPRs.  In contrast, Samsung and the public would face substantial harm if the PTAB, which has already found in its institution decisions that the claims are more likely than not to be invalidated, is deprived of the opportunity to decide invalidity on the merits.

Even assuming the district court erred in its interpretation of the plain language of the FSC (and it did not), the FSC should not be applied to the IPR proceedings here.  This Court has held that an agreement forecloses a party from challenging patent validity in the district court only if there is a clear statement of the parties' intent to do so.  The federal patent policy interests that give rise to this clear-statement rule apply equally or with even greater force in the IPR context.  Congress designed IPR proceedings to play a crucial quality-check role on issued patents and thereby protect the public from overly broad (and invalid) patents.  Here, there is no clear statement of an intent to foreclose IPR proceedings, and thus no

basis to treat the FSC in the NDA as a waiver of Samsung's right to participate in IPR proceedings.

## COUNTERSTATEMENT OF THE ISSUES

1.      Did the district court act within its discretion in denying a preliminary injunction that would prohibit Samsung from participating in inter partes review proceedings before the PTAB based on a forum selection clause in a non-disclosure agreement that expressly stated that it was not functioning as a patent license agreement?

2.      Based on federal patent policy, is a forum selection clause in a non-disclosure agreement inapplicable to inter partes review proceedings absent a clear statement of intent to preclude such proceedings?

## COUNTERSTATEMENT OF THE CASE

On April 5, 2012, Samsung and Kannuu entered into an NDA for a clearly defined purpose: "to disclose to one another certain Confidential Information." Appx211. The NDA therefore defines certain Confidential Information and restricts disclosure and use of that information. Appx211-213. The NDA expressly states that it is not a licensing agreement:

> [T]his Agreement imposes no obligation on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products, or to engage in any other business transaction. *Nothing in this Agreement shall be deemed to grant to either party a license* under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

Appx212 (emphasis added). The NDA also contains an FSC requiring, in pertinent part, that "[a]ny legal action, suit or proceeding arising out of or relating to [the NDA] or the transactions contemplated hereby" must be brought in New York. Appx213.

The parties conducted meetings during 2012 and through late 2013, after which Samsung decided not to adopt Kannuu's technology. Appx517-519, Appx2263. Kannuu asserts (Br. 3, 25) that Samsung remotely accessed Kannuu's proof-of-concept build many times during July 2013 after discussions between the parties had broken off, and that doing so is evidence of copying. However, Kannuu also asserts (Br. 4) and the district court found (Appx3) that the parties were engaged in discussions even after July, continuing those discussions into November 2013.

Kannuu filed a Complaint against Samsung in the U.S. District Court for the Southern District of New York on May 10, 2019 and filed its operative First Amended Complaint on October 1, 2019, alleging infringement of U.S. Patent Nos. 8,676,852, 8,996,579, 9,697,264, 8,370,393 and 9,436,354 (the "Asserted Patents") and breach of the NDA. Appx3, Appx240. On March 17, 2020, Samsung petitioned the PTAB for IPR of all asserted claims of the Asserted Patents, asking it to reconsider the grant of the Asserted Patents because they are invalid under 35 U.S.C. §§ 102 and 103, on eleven different grounds based on combinations of four different prior art references not considered during prosecution. Appx4.

In these IPRs, Kannuu requested discretionary denial based on the same theory advanced here—that the NDA's FSC prevented Samsung from participating in the IPRs. *E.g.*, IPR2020-00738, Paper 16 (PTAB Jul. 14, 2020). The parties fully briefed the issue. On September 22 and 23, 2020, the PTAB instituted IPRs of the '354 and '393 patents and denied IPRs as to the other Asserted Patents. By instituting these petitions, the PTAB found a reasonable likelihood that the claims of the '354 and '393 patents are invalid. *See* 35 U.S.C. § 314(a). As Kannuu admits (Br. 5-6), the PTAB instituted the '354 and '393 IPRs despite Kannuu's FSC arguments. And while the PTAB denied institution on the other patents, those decisions were not based on Kannuu's FSC arguments. Appx1954-2073. On October 7, 2020, Kannuu filed a request for rehearing, along with a request for precedential panel review, seeking a ruling that the PTAB can and should use its discretion to consider whether the NDA's FSC bars institution of IPR proceedings as to the patents at issue. Appx4, Appx2098-2147. The PTAB denied those requests. IPR2020-00737, Paper 42 (PTAB Jan. 14, 2021); IPR2020-00738, Paper 40 (PTAB Jan. 14, 2021).

Only after the decisions on institution, on October 21, 2020, Kannuu filed a motion for preliminary injunction in the district court. Appx4. The district court denied the motion on January 19, 2021. Appx1. *First*, the court held that Kannuu failed to show a likelihood of success on the merits because even though the term

"relating to" is broad, the IPR proceedings still do not fall within the scope of the FSC. Appx7-8. In particular, "the validity of the patents at issue in no way affects whether Samsung impermissibly accessed or used information deemed confidential under the Agreement." Appx8. "Because the Agreement implicates confidentiality and not the intellectual property rights of the parties, it is not directly 'connected with' or 'associated' with the IPR proceedings." *Id.* In addition, "the IPR proceedings" do not "relate to transactions contemplated under the Agreement" because "at bottom, the IPR proceedings concern the validity of patents, not confidentiality." Appx9.

*Second*, the district court found no irreparable harm to Kannuu in the absence of an injunction prohibiting Samsung's participation in the IPR proceedings. Appx9-10. The court explained that "Kannuu is not at risk of losing any bargained-for right under that agreement" and "Samsung is authorized by statute to pursue concurrently this alternative forum." Appx10. "While Kannuu may be concerned about inconsistent rulings or duplicative proceedings, those factors alone do not rise to the level of irreparable harm, especially in light of the fact that the parties can— and Samsung has—asked for a stay in this [district court] proceeding." Appx10.

*Third*, the district court found that the balance of hardships favored Samsung. Appx11. "Kannuu suffers from no hardship beyond simply litigating the patent validity in two fora—a situation that can be remedied by requesting a stay in one of

the proceedings, as here." Appx11. In contrast, "the issuance of a preliminary injunction would likely bar Samsung from pursuing relief before the PTAB at all, foreclosing a proceeding that Congress explicitly permitted." *Id.*

*Fourth*, the district court found that Kannuu failed to show that a preliminary injunction would serve the public interest. *Id.* While the court noted that it ordinarily "must carefully balance the public interest of a valid and enforceable forum selection clause against the public interest in discovering invalid patents, that balancing of interests is irrelevant where," as here, "a forum selection clause does not apply to a given case." *Id.* (citation omitted).

In response to Samsung's separate motion for a stay, the district court stayed the district court litigation pending the resolution of the IPR proceedings. Appx1, 22.

## SUMMARY OF ARGUMENT

**I.** The district court did not abuse its discretion in denying a preliminary injunction based on its conclusion that Kannuu failed to satisfy any of the four factors required for an injunction.

*First*, Kannuu does not have a likelihood of success on the merits for its claim that the FSC applies to IPR proceedings. The text of the FSC is clear: it applies only to proceedings that arise out of or relate to the NDA and transactions contemplated therein. Kannuu fails to identify any provisions in the NDA or

transactions contemplated in the NDA that are related to the invalidity of patents or IPR proceedings that would decide such an issue. That is particularly clear in this case, where the NDA expressly states it is not creating a license that would grant any rights or impose any obligations under the parties' patents. Kannuu conspicuously fails to mention this provision of the NDA and cites no provision of the NDA to the contrary. Instead, Kannuu claims that the parties discussed potential licensing. While true, that in and of itself does nothing to support Kannuu's argument for application of the FSC to an invalidity challenge before the PTAB. In order to fall within the FSC of the NDA, the IPR proceedings must be related to transactions contemplated *in the NDA*. They are not so related, and thus they do not fall within the scope of the FSC, as the district court correctly held.

*Second*, Kannuu will suffer no irreparable harm in the absence of an injunction. There is no legally cognizable harm from having the PTAB—the agency charged with determining the validity of patents—find that a patent is invalid. For that reason, Kannuu focuses not on the potential outcome of the IPR proceedings, but rather on the PTAB procedures, which it claims are inferior to those in district court. But the IPR procedures are Congress's choice and thus they too are not a legally cognizable injury. Especially given Kannuu's seven-month delay in seeking a preliminary injunction, only after the PTAB institution decisions, there is no clear error in the district court's finding of no irreparable harm.

*Third*, the balance of hardships favors Samsung.  In contrast to the lack of legally cognizable harm to Kannuu, there is substantial harm to Samsung from losing its right to pursue its instituted IPR proceedings.  Accordingly, there is also no clear error in the district court's finding that Kannuu failed to show that the balance of hardships supports an injunction.

*Fourth*, the public interest favors Samsung.  Kannuu addresses this issue solely in the context of whether the FSC is enforceable as applied to IPR proceedings, but regardless of enforceability, there is an important public interest in IPR proceedings that must be considered in the analysis.

**II.**  Furthermore, as a matter of patent policy, reading the FSC here more broadly so as to apply to IPR proceedings would be improper.  This Court has held that parties can agree to forego district court proceedings on validity only if there is a clear statement of intent to do so.  There is just as much (if not more) reason to apply this clear-statement rule to IPR proceedings.  As a matter of federal patent policy, Congress created IPR proceedings to allow the PTAB to reconsider its initial grant of a patent.  The Supreme Court and this Court consistently have held that IPR proceedings are thus intended to protect public rights.  These public rights are substantially impaired if generalized language in NDAs is interpreted to prohibit parties from engaging in IPR proceedings, especially given the ubiquity of the kind of FSC at issue here.

9

Despite Kannuu's arguments that these federal patent policy interests allow agreements to waive the right to pursue IPR proceedings, federal patent policy is clear that, at a minimum, it requires a clear statement of the parties' intent to foreclose such rights to IPR proceedings.  Applying this rule here, the FSC falls far short of the clear statement required to show that Samsung waived its right to participate in IPR proceedings.

## ARGUMENT

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (*per curiam*) (quotation marks omitted).  As Kannuu notes (Br. 16), the traditional four-factor test for injunctions applies here and this Court's review is only for abuse of discretion.  *See Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 629 (Fed. Cir. 2015).  A district court abuses its discretion only "when it makes a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings."  *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) (quotation marks omitted).

As discussed *infra* Part I, the district court did not abuse its discretion in denying a preliminary injunction because none of the four factors—likelihood of success on the merits, irreparable harm, balance of hardships, and public interest—was satisfied.  While Kannuu notes (Br. 16-17) that state law generally governs

contract interpretation, the effect of federal patent policy on the interpretation of contracts (discussed *infra* Part II) is governed by Federal Circuit law. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1361 (Fed. Cir. 2010).

## I.    THE DISTRICT COURT CORRECTLY DENIED KANNUU'S MOTION FOR A PRELIMINARY INJUNCTION

### A.    The District Court Correctly Concluded That Kannuu Failed To Show A Likelihood Of Success On The Merits

The district court correctly held that the plain language of the FSC did not cover IPR proceedings. The FSC states: "Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively" in New York court. Appx445, ¶15. Thus, the question is whether IPR proceedings arise out of or relate to the NDA or the transactions contemplated in the NDA. As discussed below, they do not.

#### 1.    IPRs Do Not Arise Out Of And Are Not Related To The NDA

The IPRs do not "arise out of" the NDA and are not "related to" the NDA under the well-established meanings of those terms. "Arise out of" means "to originate from a specified source," and thus in the context of an FSC, it covers only actions seeking to enforce "rights or duties" of the agreement. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-91 (2d Cir. 2007). Here, Kannuu accepts (Br. 24) this definition and does not identify any contractual rights or duties it is attempting to enforce in the IPR proceedings. Accordingly, Kannuu does not dispute that the IPR proceedings do not arise out of the NDA. *See* Kannuu Br. 24 (noting its

argument "might not be true if the FSC were narrower in scope, for example if it merely provided that only 'lawsuits' 'arising out of' or 'arising under' the NDA were to be brought in New York").

Kannuu also fails to show that the IPRs are "related to" the NDA.  While Kannuu argues (Br. 19-20) for an expansive definition of "related to," there are limitations on that phrase, consistent with its plain meaning.  "Although the terms 'related to' and 'in connection to' may be broader than the term 'arising out of,' they do not extend to 'any dispute between the parties.'" *Allianz Global Investors Gmbh v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 437 (S.D.N.Y. 2020) (quoting *Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 561 (S.D.N.Y. 2018).  In particular, the claims still must "depend on the existence of a contractual relationship between the parties."  *Id.* (quotation marks omitted).  Thus, patent claims "are not 'related to' the Agreement" where "their resolution does not 'require[ ] the application of various provisions of the [Agreement].'  Although the Agreement's forum selection clause contains broad language, a dispute must still fall *within* the scope of that agreement in order to be triggered."  *Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*, No. 2:19-CV-00027-JRG, 2019 WL 2904756, at *4 (E.D. Tex. July 5, 2019) (brackets and emphasis in original; quoting *NuCurrent, Inc. v. Samsung Elecs. Co.*, No. 6:18-CV-51-JRG-KNM, 2018 WL 7821099, at *8

(E.D. Tex. Dec. 26, 2018)).  In short, no matter how broad the meaning of "relate to," the agreement itself still must have some connection to the claims.

Here, the agreement is an NDA, and the claim for invalidity of patents has no connection to the NDA.  The NDA governs the disclosure and use of certain confidential information.  Appx443-445.  It does not govern or even mention any patents that may or may not be based on the confidential information.  Accordingly, the existence of the NDA does not in any way determine whether Kannuu's patents are valid.  Indeed, that is obvious from the fact that a patentee cannot render its patents valid by entering into NDAs.  Simply put, the NDA governs confidentiality, not patents.  Thus, as the district court correctly held, "the validity of the patents at issue in no way affects whether Samsung impermissibly accessed or used information deemed confidential under the Agreement."  Appx8.

Kannuu's arguments ignore what the IPR proceedings must be related to, *i.e.*, the NDA.  Kannuu does not dispute that the NDA is completely irrelevant to all of the primary considerations in deciding patent validity.  Instead, Kannuu's argument (Br. 20) for the supposed relevance of the NDA to the IPR proceedings rests only on Samsung's supposed copying.  However, the IPR proceedings concern claims of invalidity on anticipation grounds in addition to obviousness.  *See*, *e.g.*, *Synopsis, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016).  And while copying is a secondary consideration for obviousness, such secondary

considerations are irrelevant to anticipation.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("obviousness requires analysis of secondary considerations of nonobviousness, while secondary considerations are not an element of a claim of anticipation.").

Moreover, even if copying were related to the claims in the IPR proceedings, the provisions of the NDA still are irrelevant in determining whether any supposed copying makes the patents non-obvious.  Whether the information supposedly copied constitutes confidential information for purposes of the NDA and whether Samsung's access to or use of the information violated the NDA matter in deciding if there is a breach of contract.  But there can be copying without a breach, and there can be a breach without copying.  Indeed, if Samsung actually copied Kannuu (and it did not), then Kannuu could prove that entirely without reference to the NDA.  And Kannuu conceded this point below, acknowledging that "resolution of the IPR proceedings will have 'no impact on the breach of contract issues to be decided by the Court.'"  Appx8 (district court quoting opposition to stay, Doc. 72 at 10).  Thus, any supposed copying is not related to the NDA within the meaning of the FSC.

In any event, there is no evidence in support of the assertion of copying, let alone copying related to the NDA that is also relevant to obviousness.  The *only* supposed evidence Kannuu puts forward—what it characterizes as "eight pages of arguments and evidence" (Br. 25)—is merely a declaration asserting that Samsung

looked at certain confidential information that Kannuu had provided in July 2013, after the parties supposedly had broken off discussions. *See* Appx2164-2171. However, Kannuu itself concedes (Br. 4) that the parties *remained in discussions throughout 2013*, including meetings in August and November. Regardless, looking at information does not establish copying for purposes of the secondary consideration analysis. Rather, "copying requires the replication of a specific product." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004). Kannuu does not identify any specific product that Samsung supposedly replicated. Nor does Kannuu attempt to show a nexus between any purported copying and the inventive aspect of the patented invention, as is required to make copying a relevant secondary consideration. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999). Thus, Kannuu's assertion of copying is irrelevant to the invalidity claim, and cannot be used as a back door to make the NDA relate to the invalidity claim for purposes of the FSC.

### 2. IPRs Do Not Arise Out Of And Are Not Related To Transactions Contemplated By The NDA

Kannuu likewise fails to show that the IPRs arise out of or are related to transactions contemplated by the NDA. Once again, Kannuu does not dispute that it fails the "arise out of" requirement. And once again, Kannuu misinterprets the "relating to" language by ignoring precisely what the proceeding must be related to, *i.e.*, "transactions contemplated hereby." Appx445 ¶15.

When an agreement refers to "transactions contemplated hereby," that means—under well-established New York law—the transactions actually addressed in the agreement itself.[1]   For instance, a New York district court rejected the argument that continued trading of the shares at issue in the agreement constituted a transaction contemplated by the agreement.  *See Discover Growth Fund v. 6D Glob. Techs. Inc.*, No. 15-CV-7618 PKC, 2015 WL 6619971, at *9 (S.D.N.Y. Oct. 30, 2015) ("'Transactions contemplated by this Agreement' encompasses only the execution of the [Stock Purchase Agreement]: the parties' exchange of $10 million for 1,088 preferred shares of 6D.  Its meaning does not include the continued trading of 6D common stock on NASDAQ.").  Similarly, a New York state court held that a transaction was not contemplated by the agreement where the terms of that transaction were not specified in the agreement.  *See Wilson v. Dantas*, 40 Misc. 3d 1236(A), 977 N.Y.S.2d 671 (N.Y. Sup. 2013), 2013 WL 4747197 at *4, *aff'd as modified on other grounds*, 128 A.D.3d 176 (1st Dep't 2015), *aff'd*, 29 N.Y.3d 1051 (2017) (holding that the plaintiff "failed to establish that his causes of action arise out of or relate to a transaction contemplated by the Operating Agreement" because "[t]he provisions cited by [the plaintiff] in the … Agreement wholly fail to identify what [the plaintiff's] compensation is or how it would be paid"); *see also, e.g.*, *IMO*

---

[1]   As Kannuu recognizes (Br. 17), the NDA should be interpreted based on New York law.

*Indus., Inc. v. Sierra Int'l, Inc.*, No. CIV. A. 18783, 2001 WL 1192201, at *2 (Del. Ch. Oct. 1, 2001) (holding that a post-closing adjustment to purchase price of assets covered by a purchase agreement is not a "transaction[] contemplated by the agreement" because "the better and more natural reading of [the 'transactions contemplated' provision] is that it refers to the transactions occurring at closing").

Here, not only does the NDA fail to establish the terms of any proposed patent license agreement—as required to show that the NDA contemplated such a transaction—but the NDA expressly *disavows* that it is creating such a transaction.

> Each party recognizes and agrees that nothing contained in this Agreement will be construed as granting any rights to the receiving party, by license or otherwise, to any of the Confidential Information disclosed by the disclosing party except as specified in this Agreement. . . . Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks[,] or other intellectual property rights.

Appx444 ¶8. This language is unequivocal: the parties are not agreeing to a patent license agreement, and thus such an agreement is not contemplated in the NDA. Kannuu ignores this language entirely and cites no language in the NDA that contemplates a patent license agreement.[2]

Kannuu's argument (Br. 18, 20-21) therefore rests entirely on the repeated assertion that the parties contemplated a patent license agreement in certain

---

[2]  Likewise, the headings of the arguments of Kannuu's amici (Br. 4, 8) betray that their arguments pertain only to "Patent License Agreements."

17

"discussions." But the parties' discussions are not contained within the four corners of the NDA. And the question is whether a patent license agreement is a "transaction[] contemplated herein," *i.e.*, in the NDA itself. It is not, and thus the FSC does not apply. Indeed, Kannuu's contrary interpretation would suggest that any transaction related to any future discussions between Kannuu and Samsung would fall within the FSC. That extreme result is not what the parties agreed upon in the NDA. This repetition of Kannuu's desire to have entered into a license agreement does not, and cannot, alter the clear intent of the parties as set forth within the four corners of the NDA.

Kannuu fails to cite any case law to the contrary. Kannuu relies (Br. 22) principally on *Dodocase VR, Inc. v. Merchsource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019), but this opinion is unpublished and not precedential, and regardless, readily distinguishable. *Dodocase* addressed a clause within an actual license agreement (not mere discussions about a potential license agreement) wherein the licensee explicitly agreed not to challenge the patents. *Id.* at 932. The "Master License Agreement ('MLA')" in *Dodocase* specifically granted rights in three patents, and this Court was explicit that its holding applied to the particular instance of a license agreement: "Patent infringement disputes do arise from license agreements. […] Thus, the governing law clause in the present case, as in *any patent license agreement, necessarily covers disputes concerning patent issues*." *Id.* at 932, 934-

35 (emphasis added). The other cases Kannuu cites (Br. 22) also concern patent license agreements and are likewise inapposite here, where the NDA is expressly not a patent license agreement. *See Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1330 (Fed. Cir. 2000) ("[T]hese contracting parties would have negotiated the clauses of the patent license agreement with knowledge of patent law, including available remedies for patent law violations."); *Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*, No. 2:19-cv-04980-AB-FFMx, 2020 WL 1032395, at *3 (C.D. Cal. Jan. 23, 2020) ("Guest-Tek's PTAB filings have some logical or causal connection to the License Agreement.").

Kannuu also relies (Br. 19) on *NuCurrent, Inc. v. Samsung Elecs. Co.*, 2018 WL 7821099, but that case did not involve an IPR proceeding, and instead concerned issues of alleged infringement and misappropriation of trade secrets that were directly affected by the NDA. *See id.* at *7 ("NuCurrent's misappropriation of trade secret and patent infringement claims are premised on the disclosure of confidential and proprietary information in 2015 and Defendants' misuse of that information."); *id.* at *8 ("the present litigation will require the application of several provisions of the 2016 NDA"). *NuCurrent* did not suggest that the question of patent validity was related to the NDA, that an allegation of copying put the claims within the FSC, or

19

that licensing was a transaction contemplated in the NDA.[3]  Thus, nothing in *NuCurrent* conflicts with the district court's holding here.  Indeed, when the district court in New York considered whether the FSC there applied to IPR proceedings, it concluded that the IPR proceedings should proceed.  *See NuCurrent Inc. v. Samsung Elecs. Co.*, No. 19CV798 (DLC), 2019 WL 2776950, at *3-*4 (S.D.N.Y. July 2, 2019).  Kannuu suggests (Br. 8) that this holding was based on the expiration of the FSC in that case, but the court also held, independent of the expiration issue, that "Samsung's IPR petitions do not relate to the surviving confidentiality obligations," and "the terms of the NDA do not permit it to apply to any and all disputes between the parties."  *Id.* at *4, *see also id.* at *1 (applying an FSC in an NDA with virtually identical language to the FSC at issue in this case).  The same is true here.  Accordingly, the district court correctly concluded that Kannuu failed to establish a likelihood of success on the merits.

---

[3]    Kannuu also rests (Br. 9, 19) on Samsung's arguments in the *NuCurrent* case, and while a party's arguments in another case obviously are not controlling, it is worth noting that Samsung did not argue that the NDA was related to questions of patent validity (or copying in particular) and did not suggest that licensing qualified as a transaction contemplated by the NDA.  *See* Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), *NuCurrent, Inc. v. Samsung Elecs. Co.*, No. 6:18-CV-51-JRG-KNM, 2018 WL 8244727 (E.D. Tex. July 12, 2018).  Rather, Samsung relied on the fact that the willful infringement claims before the district court (unlike the IPR's invalidity issue before the PTAB here) were based on "the disclosure of 'Confidential Information.'"  *Id.*

**B.    The District Court Correctly Concluded That Kannuu Will Suffer No Irreparable Harm Absent An Injunction**

The district court also correctly found that allowing the PTAB to conclude IPR proceedings does not constitute irreparable harm to Kannuu.  Appx9-10.  To satisfy the irreparable harm factor, Kannuu must show that absent an injunction, it "will suffer an injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation marks omitted).  And irreparable harm is required for an injunction.  *See, e.g.*, *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).

The fact that the PTAB may find Kannuu's patents invalid in whole or in part is not irreparable harm as a matter of law because the invalidation of an invalid patent is not a cognizable legal injury.  As the Supreme Court has explained: "Patent claims are granted subject to the qualification that the PTO has 'the authority to reexamine—and perhaps cancel—a patent claim' in an inter partes review." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016)).  Thus, the supposed harm of having an IPR cancel certain patent claims is not a legal injury; it is an inherent part of the rights granted in the patent in the first place.  *See NuCurrent*, 2019 WL 2776950, at *5 ("The cancellation of an improvidently issued patent is not the sort of injury that weighs in favor of this injunction request.").

Kannuu also complains (Br. 28) that the rules in an IPR proceeding are not as favorable to it as the rules in district court, given the lack of a presumption of validity and limitations on discovery. However, those rules are set by Congress and the PTAB; the use of those procedures thus are not a legally cognizable injury: "Although the PTAB may be less likely to affirm the validity of [the plaintiff]'s patents than a district court, it is the PTO that issued [the plaintiff]'s patents; the PTAB is authorized by law to review and invalidate those patents 'that should not have issued' in the first place." *NuCurrent*, 2019 WL 2776950, at *5 (quoting H.R. Rep. No. 112-98(I), at 39-40 (2011)). And contrary to Kannuu's suggestion (Br. 28), the fact that this is a second forum for evaluating invalidity is irrelevant, as this too was Congress's design. *See infra* at 31-32. As the district court explained, the statute provides for IPR proceedings that may run concurrently with district court proceedings, and any "concern[] about inconsistent rulings or duplicative proceedings … do[es] not rise to the level of irreparable harm, especially in light of the fact that the parties can—and Samsung has—asked for a stay in this proceeding." Appx10.

Kannuu fails to cite any legal basis for treating the existence of IPR proceedings as an irreparable injury. Kannuu relies (Br. 27-28, 33) primarily on *General Protecht Group., Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355 (Fed. Cir. 2011), but that case dealt with proceedings before the International Trade

Commission ("ITC") and another district court, not IPR proceedings. *Id.* at 1358. An ITC proceeding is based on a particular statutory mandate concerning exclusion of infringing products from the U.S. marketplace. It is not remotely the same as an IPR proceeding, which allows the same agency that granted the patent to reconsider whether the patent is valid, as Congress intended. In short, having the PTAB determine validity does not constitute irreparable injury because the PTAB is not just another forum for litigation of all patent issues between the parties; it is the agency charged with determining the validity of patents. *See Cuozzo*, 136 S. Ct. at 2143-44. In any event, *General Protecht* concerned a settlement agreement with a *specific covenant not to sue* for patent infringement, and an FSC requiring disputes to be litigated in New Mexico. 651 F.3d at 1357. Thus, allowing the other district court and ITC actions would have rendered that provision a nullity. *Id.* at 1364. Here, in contrast, the FSC in the NDA has a clearly stated meaning for channeling disputes related to that agreement to the New York courts without stretching it to cover PTAB proceedings.

Kannuu likewise errs in its reliance (Br. 29) on *Dodocase*. In that case, the finding of irreparable harm was based on "the fact that Dodocase was a small company with limited employees and resources," and thus faced particular hardships in having to "defend a challenged patent on multiple fronts at the same time." *Dodocase*, 767 F. App'x at 935 (quotation marks omitted). Kannuu notes (Br. 29)

that there are potential substantial expenses in defending the IPR proceeding, but unlike Dodocase, Kannuu does not claim any lack of resources or particular hardship in doing so. And in the absence of such a situation, there is no legal basis to treat these expenses as irreparable. *See, e.g.*, *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2016 WL 6650380, at *7 (E.D. Mich. Nov. 10, 2016) ("The fact that Versata may incur some amount of additional incremental expense by proceeding in front of the PTAB—expenses it may be able to recover from Ford in the event the Court ultimately concludes that the Protection Provision prohibits Ford from pursing the IPR Petitions—does not amount to sufficient irreparable harm to justify injunctive relief."). Moreover, this Court in *Dodocase* did not affirmatively find irreparable harm, as Kannuu suggests (Br. 29). Rather, it held that "[t]he district court did not abuse its discretion in evaluating irreparable harm." *Dodocase*, 767 F. App'x at 935. Likewise, the district court here did not abuse its discretion in its evaluation of irreparable harm.

Kannuu's delay in seeking an injunction also refutes any irreparable harm. Courts routinely hold that any significant delay weighs strongly against a finding of irreparable harm. *See, e.g.*, *Richard Feiner & Co. v. Turner Entm't Co.*, 98 F.3d 33, 34-35 (2d Cir. 1996), *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010); *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) (collecting cases). Kannuu waited to file its motion for a preliminary

injunction until seven months after Samsung filed its IPR petitions on all five patents-in-suit and nearly a month after the PTAB instituted the IPRs as to the '354 and '393 patents. *See* Appx4 (IPR petitions filed March 17, 2020; PTAB institution decisions issued September 23, 2020; motion for preliminary injunction filed October 21, 2020). Kannuu's delay of over six months in requesting the injunction, and only after the PTAB instituted the IPRs, thus negates its claimed irreparable harm. *See Nomadix, Inc. v. Guest-Tek Interactive Entm't Ltd.*, No. 2:19-cv-04980-ABF, 2019 WL 7205896, at *2 (C.D. Cal. Sept. 30, 2019) (denying preliminary injunction against IPRs because waiting until institution was delay sufficient to negate irreparable harm); *cf. Dodocase*, 767 F. App'x at 932-33 (noting that the patentee sought an injunction promptly before the PTAB's decision on institution). The attempt to prevent IPR proceedings from proceeding after institution is, in effect, an attempt to appeal the PTAB's institution decision itself, which is prohibited by statute and contrary to binding precedent. *See* 35 U.S.C. § 314; *In re Procter & Gamble Co.*, 749 F.3d 1376, 1378-1379 (Fed. Cir. 2014) (declining to direct PTAB to reverse institution under 35 U.S.C. § 314); *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 447 (D.N.J. Mar. 30, 2015) (denying injunction because "[a]lthough Plaintiffs cast this injunction as one against Defendants, in reality it operates as one against the IPR process itself").

Moreover, by the time this appeal is argued and decided, it is likely that the only action remaining for the PTAB to take will be the issuance of its decision. *See* IPR2020-00737, Paper 14 (PTAB Sept. 23, 2020); IPR2020-00738, Paper 23 (PTAB Sept. 23, 2020) (oral argument scheduled for June 25, 2021, final written decision expected by September 2021). Thus, any supposed harm from Kannuu having to participate in the IPR proceeding likely would be moot. The only supposed harm remaining therefore would be that patent claims might be invalidated by the PTAB based on the agency's determination of validity. And as discussed above, the PTAB's determination of validity does not itself constitute irreparable injury.

## C.    The District Court Correctly Concluded That The Balance of Hardships Favors Samsung

The district court further correctly found that the balance of the equities favors Samsung. Appx11. As discussed above, there is no legally cognizable harm to Kannuu. Kannuu argues (Br. 29-30) that the supposed difficulty of litigating in multiple forums and potential delay weigh in favor of an injunction, but Kannuu ignores that there is a stay in the district court and that Kannuu itself delayed in seeking an injunction.

In contrast, there is substantial harm to Samsung from giving up its right to pursue relief before the PTAB for already instituted IPRs. Kannuu asserts (Br. 30) that the district court gave this factor "undue weight," but the weighing of interests is within the district court's discretion. Kannuu again relies (Br. 30) upon *Dodocase*

and *General Protecht*, and both are again inapposite. In *Dodocase*, the FSC came in a patent license agreement, not an NDA, and this Court simply found no abuse of discretion where the district court held that the balance of hardships favored the patentee—not remotely suggesting that alternative holding would be an abuse of discretion. 767 F. App'x at 935 ("While we acknowledge MerchSource's concern [about not being barred from refiling in the PTAB], we find that the district court did not abuse its discretion in determining that the balance of hardships tipped in favor of granting the preliminary injunction."). In *General Protecht*, the FSC also came in a settlement agreement regarding a patent license, and this Court simply found no abuse of discretion in the district court's finding that the balance of hardships favored the patentee. 651 F.3d at 1365. Here, in contrast, the district court found the balance favored Samsung, and especially given the lack of any contract between Samsung and Kannuu regarding patents or their validity, this finding was not clearly erroneous.

### D.    The District Court Correctly Concluded That The Public Interest Favors Samsung

Finally, the district court also correctly found that the public interest does not favor Kannuu because the FSC does not apply to IPR proceedings. Appx11. Kannuu addresses the public interest factor in its section discussing the enforceability of an FSC that applies to IPR proceedings, and for the sake of simplicity, Samsung does the same here. But it is important to note that regardless

of whether the public interest renders an FSC void as a matter of law, it still may weigh against the imposition of an injunction. And as discussed *infra* Part II, there is a strong public interest in allowing IPR proceedings, which must be considered in the analysis. In contrast, any public interest in the enforcement of FSCs is especially weak here, given that this FSC came in an NDA that expressly disavowed any patent licensing implications and given that Kannuu delayed seeking an injunction until after institution of the IPRs. Thus, regardless of whether an FSC that applied to IPRs may be enforceable, Kannuu shows no clear error in the district court's finding that Kannuu failed to satisfy the public-interest factor required for an injunction.

## II. AN AGREEMENT NOT TO PARTICIPATE IN IPR PROCEEDINGS WOULD REQUIRE A CLEAR STATEMENT OF INTENT TO WAIVE SUCH PROCEEDINGS, WHICH IS ABSENT HERE

Even assuming that the FSC here could be interpreted to apply to IPR proceedings (and it cannot), such an interpretation would be erroneous as a matter of federal patent policy. There must be a clear statement of the parties' intent to apply the FSC to IPR proceedings, which is absent here. In the district court, Samsung argued more broadly for the unenforceability, based on public policy, of FSCs that prohibit participation in IPR proceedings. *See* Appx2273-2277, 2283-2284. This Court need not address this broader argument because the narrower argument made here is sufficient to resolve this case, *i.e.*, regardless of whether *some* FSCs are enforceable as applied to IPR proceedings, the FSC *here* is not because

there is no clear statement of an intent to apply to IPR proceedings.  To the extent

that Kannuu may complain that Samsung did not raise this narrower argument in the

district court, such a complaint is meritless because "[a]n appellee may rely upon

any ground supported by the record for affirmance of the judgment, whether or not

the lower court relied on that ground." *Granite Management Corp. v. United States*,

416 F.3d 1373, 1378 (Fed. Cir. 2005); *see also, e.g.*, *Rexnord Industries, LLC v.*

*Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013); *Glaxo Group Ltd. v. TorPharm, Inc.*,

153 F.3d 1366, 1371 (Fed. Cir. 1998).[4]

### A.  Based On Federal Patent Policy, A Waiver Of A Challenge To Validity Is Enforceable Only If There Is A Clear Statement Of Such A Waiver

Any waiver of the right to challenge the validity of a patent is enforceable

only if it is clear and explicit.  This Court has explained:  "[A] party does not waive

---

[4]  The propriety of addressing this issue on appeal is especially clear here for three reasons.  First, Samsung *did* raise the public policy issue, and whether that policy warrants unenforceability or a clear-statement rule is simply a different potential implication of the same issue.  *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) ("[T]his court does not review supporting arguments, but only the decisions reached by the trial court.").  Second, the district court would not have reached the issue anyway, as it held (correctly) that the plain language of the FSC did not apply to IPR proceedings.  Third, this appeal arises only in the context of a preliminary injunction, and thus Samsung would be free to raise this issue in further proceedings.  Accordingly, there is no basis to refuse to consider the issue now (assuming that the Court reaches the public interest issue at all).

its right to challenge the validity of a patent as to future accused products absent a clear intent to do so." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002). Similarly, this Court has held that "invalidity and unenforceability claims may be released, but only if the language of the agreement or consent decree is clear and unambiguous." *Baseload Energy*, 619 F.3d at 1362. Thus, "any surrender of the right to challenge validity of a patent is construed narrowly." *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999); *see also Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 481 (Fed. Cir. 1991) (same).

This principle follows from the policy considerations that favor allowing challenges to the validity of patents, as recognized in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). *Lear* held that the contract doctrine of licensee estoppel was trumped by the federal patent policy: "The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts. It seems to us that such a requirement would be inconsistent with the aims of federal patent policy." *Id.* at 673. Thus, *Lear* directs courts to "weigh the federal policy embodied in the law of intellectual property against even explicit contractual provisions and render unenforceable those provisions that would undermine the

30

public interest." *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003).[5]

As this Court held, a clear-statement rule "strikes a reasonable balance between the policy considerations enunciated in *Lear*, and those favoring voluntary settlement of litigation." *Foster*, 947 F.2d at 481. In particular, even though "the *Lear* policy considerations do not mandate that future challenges to a patent's validity cannot be barred by a consent judgment, such considerations should weigh into the interpretation of the terms in a consent judgment for purposes of issue preclusion." *Id.*; *see also Baseload Energy*, 619 F.3d at 1361 ("[T]he policies of *Lear* and the interests of settlement must be balanced.").

## B. The Clear-Statement Rule Applies To A Purported Waiver Of Participation In IPR Proceedings Given The Strong Public Interests In Allowing Those Proceedings

While this Court previously applied the clear-statement rule in the context of a waiver of invalidity challenges in the district court, this Court's reasoning applies equally in the IPR context. The policy considerations in favor of allowing invalidity challenges in IPR proceedings are even greater—and certainly no less than—the considerations supporting such challenges in district courts. For instance, this Court

---

[5] Kannuu attempts (Br. 35) to distinguish *Lear* as concerning a bar on "all validity challenges," but the test articulated in *Lear* is not limited to this circumstance, and indeed, Kannuu presents no legal basis for refusing to apply the test here, or for enforcing a contractual provision that is contrary to federal patent policy.

has held that assignors who sold their patent rights cannot challenge validity in the district court, but *can* do so IPR proceedings. *See Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1266 (Fed. Cir. 2020) ("Although Minerva would have been estopped from challenging the validity of the '183 patent claims in district court, it was able to challenge their validity in an IPR proceeding ….").

More generally, the America Invents Act ("AIA") (which created proceedings before the PTAB) established a strong policy in favor of IPR proceedings that would be undermined by unjustifiably broadening contractual provisions to prohibit participation in IPRs. "Reacting to 'a growing sense that questionable patents are too easily obtained and are too difficult to challenge,' Congress sought to 'provid[e] a more efficient system for challenging patents that should not have issued' and to 'establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'" *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290-91 (Fed. Cir. 2015) (quoting H.R. Rep. No. 112-98, 2011 U.S.C.C.A.N. 67, 69, at 39-40).[6] The text of the statute reflects this purpose by allowing anyone who is "a person who is not the

---

[6]    The AIA abolished the Board of Patent Appeals and Interferences and replaced it with the PTAB, streamlining the administrative process for challenging the validity of patents from a much-derided "inter partes reexamination" process involving written submissions to a single examiner (without discovery) that might not be resolved for years to an improved procedure for discovery and full hearing before three patent ALJs.  35 U.S.C. §§ 6, 311, 316, 318.

owner of a patent" to file an IPR petition, even where there are concurrent district court proceedings. 35 U.S.C. § 311(a). The statute also makes clear that the PTAB can conduct IPR proceedings regardless of the petitioner's choice to withdraw from the proceedings. *See id.* § 317(a) ("If no petitioner remains in the inter partes review, the Office may terminate the review or proceed to a final written decision under section 318(a)."). Thus, there is a policy against preventing the PTAB from reviewing whether the patent was properly granted and from issuing its decision.

Moreover, the purpose of IPR proceedings is fundamentally a *public* purpose that goes beyond the particular litigants. As the Supreme Court has explained:

> Inter partes review … considers the same statutory requirements that the PTO considered when granting the patent. … So, like the PTO's initial review, the Board's inter partes review protects "the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope." Thus, inter partes review involves the same interests as the determination to grant a patent in the first instance.

*Oil States*, 138 S. Ct. at 1373 (quoting *Cuozzo*, 136 S. Ct. at 2144). Both the public and PTO have strong interests in allowing such reviews. *Cuozzo*, 136 S. Ct. at 2144. Indeed, the Supreme Court's holding that administrative determination of validity in IPR proceedings was proper rested expressly on its reasoning that this determination was one of "public rights." *Oil States*, 138 S. Ct. at 1373-74. This Court has likewise held that "Congress ... saw powerful reasons to utilize the expertise of the PTO [for IPRs/PGRs] for an important public purpose—to correct the agency's own errors in issuing patents in the first place." *MCM*, 812 F.3d at 1290.

If FSCs are broadly applied to prohibit participation in IPR proceedings, it undermines these public rights, allowing invalid patents to remain in effect and thereby thwarting potential innovation. While Kannuu suggests (Br. 40-41) that non-contracting parties can still bring IPR proceedings, Kannuu fails to confront the fact that NDAs and FSCs like the ones at issue here are common, as Kannuu's own amici recognize (Br. 2, 8). Thus, if interpreted as broadly as Kannuu suggests, they would prohibit a substantial number of companies from pursuing IPR proceedings. And these prohibited companies would be precisely the entities most likely to have pursued those proceedings, thus leaving few (if any) other private parties with an incentive to do so. In short, Kannuu's approach would materially and detrimentally affect the public's interest in ensuring that interested parties have the ability to challenge the validity of patents through IPR proceedings.

Furthermore, the PTO itself has stated that a contractual provision denying the ability to seek inter partes reexamination is unenforceable: "[A] contractual provision preventing a party from seeking reexamination would be void as being contrary to public policy. [P]reventing a third-party requester (and a potential licensee of the subject patent) from requesting reexamination of a patent would be contrary to the public policy embodied in the *Lear v. Adkins* decision." Inter Partes Reexamination Proceeding, Decision on Petition to Vacate Order Granting Reexamination, Control No. 95/000,123, at 5 (Office of Patent Legal Admin. June

7, 2006).  While this decision concerned inter partes reexamination proceedings, there is no plausible basis to distinguish inter partes review proceedings for these purposes.  Indeed, in this very case, the PTAB rejected Kannuu's argument against institution based on the FSC, holding that "contractual estoppel is not a defense to *inter partes* review."  Appx2029, 3361, 3433.  And regardless of whether this Court follows the PTAB's holdings that parties cannot agree to foreclose IPR proceedings, at a minimum the PTAB's recognition of the policy interests in ensuring that parties do not readily contract around IPR proceedings should be factored in the analysis.

In sum, there is nothing in the statutory language or as a matter of public policy that would allow a party to waive IPR proceedings based on language that would not be considered clear enough to support a waiver of district court proceedings.

## C. Kannuu Cannot Refute The Strong Public Policy Interest In Allowing IPRs

Kannuu fails to confront the legislative intent to create an independent, more efficient system for improving patent quality underlying IPRs, the Supreme Court precedent establishing the public interest at stake, or the PTO decisions on point.  And Kannuu's attempts to sidestep the federal patent policy interests here are unavailing.

*First*, Kannuu argues (Br. 36) that patent policy would not be disturbed because Samsung can still bring validity challenges in district court.  However, IPRs

are administrative review proceedings with a distinct purpose and are not the equivalent of district court litigation. Indeed, they were expressly designed to exist independent of and in addition to district court proceedings. *See Cuozzo*, 136 S. Ct. at 2146. Kannuu also suggests (Br. 38-39) that the parties may prefer the standards and procedures of district court over those of the PTAB. However, the differences in the PTAB are part and parcel of the public policy that Congress intended to promote by permitting IPR proceedings—to encourage innovation and protect the public. *See Cuozzo*, 136 S. Ct. at 2144-45.

*Second*, Kannuu suggests (Br. 33) that this Court favor the interests in enforcing FSCs over those in patent policy. However, Kannuu ignores that the interest in allowing parties to choose a forum is not the same as allowing them to prevent proceedings in what would otherwise be an additional forum. In other words, if parties want to choose a New York court over a California court, that is generally acceptable and enforceable. But applying FSCs to IPRs does not substitute one forum for another; it *eliminates* one additional forum that Congress specifically wanted to make available for the benefit of the public and patent policy. For those reasons, Kannuu's (Br. 33) and its amici's (Br. 6-7) arguments about FSC clauses generally are inapposite. Regardless, Kannuu and its amici fail to identify any benefit in precluding IPR proceedings in the absence of a clear statement of the parties' intent to do so.

*Third*, the cases Kannuu (Br. 33-34) and its amici (Br. 6) cite likewise do not support their argument.  Most concern the choice between different courts, not the choice to disallow a separate proceeding.  *See, e.g.*, *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59-60 (2013); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972).  Only one, *Dodocase*, concerned IPR proceedings, and in that case, this Court stated only in a single sentence that "[t]he district court did not abuse its discretion in determining that the public interest supported granting a preliminary injunction."  *Dodocase*, 767 F. App'x at 936.  This Court did not address *Lear* or the patent policies underlying IPR proceedings, and regardless, the FSC there *did* have a clear statement of an intent to prevent any challenges to patent validity.  *Id.* at 932 (FSC stated "MerchSource shall not … attempt to challenge the validity or enforceability of the Licensed IP").  Kannuu also cites (Br. 34) *General Protecht* again, but the policies regarding the ITC proceedings at issue there are not remotely equivalent to the IPR proceedings in which the agency that granted the patent is permitted to reconsider its own determination of validity for the interests of the public.  More to the point, Kannuu cites (Br. 39) the cases applying FSCs to prevent invalidity challenges in district court, but as discussed *supra* Part II.A, those cases did so *only* by applying a rule requiring a clear statement of such a waiver.  Thus, far from supporting Kannuu's argument, these cases show that disallowing invalidity challenges is permitted only in narrow circumstances not present here.

**D.     The FSC Contains No Clear Statement Of A Waiver Of The Right To Participate In IPR Proceedings**

Applying the clear-statement rule here, there is no question that Samsung did not waive its right to challenge validity in IPR proceedings.  This Court has held that even agreements stating that the patents at issue were valid did not suffice to show waiver unless they also expressly stated that the party could not challenge validity. *See Ecolab*, 285 F.3d at 1377; *Foster*, 947 F.2d at 481.  As discussed *supra* Part I.A, there is no waiver under the plain language of the FSC, and there certainly is no clear and explicit waiver, as should be required under this Court's precedents.

## <u>CONCLUSION</u>

The district court's order denying a preliminary injunction should be affirmed.

Respectfully Submitted,

Dated: April 19, 2021

By: */s/ Victoria F. Maroulis*
Kevin P.B. Johnson
Victoria F. Maroulis
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

David M. Cooper
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Marissa Ducca
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington DC 20005
(202) 538-8000

*Counsel for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## **PROOF OF SERVICE**

The undersigned hereby certifies that on April 19, 2021, I electronically filed the foregoing BRIEF FOR DEFENDANTS-APPELLEES with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Victoria F. Maroulis*
Victoria F. Maroulis

## **CERTIFICATE OF COMPLIANCE**

Counsel for Defendants-Appellees hereby certifies that:

1.   The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because exclusive of the exempted portions it contains 9,527 words as counted by the word processing program used to prepare the brief; and

2.   The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2013 in a proportionately spaced typeface: Times New Roman, font size 14.


Dated:  April 19, 2021                                   /s/ *Victoria F. Maroulis*
                                                                       Victoria F. Maroulis