No. 21-1638

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## KANNUU PTY LTD.,

*Plaintiff-Appellant,*

v.

## SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of New York in No. 1:19-cv-04297-ER
District Judge Edgardo Ramos

---

## BRIEF OF *AMICI CURIAE* INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF APPELLEES

---

Phillip R. Malone
JUELSGAARD INTELLECTUAL
    PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law
    School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 725-6369
jipic@law.stanford.edu

*Attorney for Amici Curiae*

April 28, 2021

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* certifies that:

1.      The full names of the *amici* I represent are: Intellectual Property Law Professors (See Attachment A).

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is: N/A.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici curiae* I represent are: None.

4.      The names of all law firms and the partners or associates that appeared for the *amici* I represent or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5.      The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: PTAB IPR2020-00737; PTAB IPR2020-00738.

6.      Information required under Fed. R. App. P. 26.1(b) and 26.1(c): None

April 28, 2021                    /s/ Phillip R. Malone
                                  Phillip R. Malone

*Attorney for Amici Curiae*
JUELSGAARD INTELLECTUAL PROPERTY AND
    INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School

# ATTACHMENT A TO CERTIFICATE OF INTEREST

**Professor Margo A. Bagley**
Emory University School of Law

**Professor Jeremy W. Bock**
Tulane University Law School

**Professor Dan L. Burk**
University of California, Irvine School of Law

**Professor Michael A. Carrier**
Rutgers Law School

**Professor Rochelle C. Dreyfuss**
New York University School of Law

**Professor Samuel F. Ernst**
Golden Gate University School of Law

**Professor William T. Gallagher**
Golden Gate University School of Law

**Professor Shubha Ghosh**
Syracuse University College of Law

**Professor Leah Chan Grinvald**
Suffolk University Law School

**Professor Erik Hovenkamp**
USC Gould School of Law

**Professor Mark A. Lemley**
Stanford Law School

**Professor Orly Lobel**
University of San Diego School of Law

**Professor Brian J. Love**
Santa Clara University School of Law

**Professor Stephen McJohn**
Suffolk University Law School

**Professor Michael J. Meurer**
Boston University School of Law

**Professor Shawn Miller**
University of San Diego School of Law

**Professor Tyler T. Ochoa**
Santa Clara University School of Law

**Professor Christopher M. Turoski**
University of Minnesota Law School

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......................................................................... i

ATTACHMENT A TO CERTIFICATE OF INTEREST ................................... iii

TABLE OF CONTENTS ................................................................................... v

TABLE OF AUTHORITIES ........................................................................... vi

INTEREST OF *AMICI CURIAE* ...................................................................... 1

SUMMARY OF ARGUMENT ......................................................................... 1

ARGUMENT ................................................................................................... 3

I.  Absent Compelling Countervailing Interests, a Boilerplate Forum
    Selection Clause in an NDA Cannot Preclude Validity Challenges via
    *Inter Partes* Review. ................................................................................ 4

    A.  Expanding Bars to Validity Challenges to Include Forum Selection
        Clauses in NDAs Would Frustrate Patent Policy. ................................. 4

    B.  There Is No Compelling Countervailing Interest Here. ......................... 8

II. Extending Forum Selection Clauses in NDAs to Foreclose *Inter Partes*
    Review Would Contravene Public Policy. ................................................ 10

    A.  With the AIA, Congress Adopted a Strong Policy Favoring Validity
        Challenges Before the PTAB. ............................................................... 11

    B.  Allowing NDAs to Bar *Inter Partes* Review Would
        Disproportionately Harm the Entities Best Suited to Challenge
        Patent Validity. ................................................................................... 13

APPENDIX

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**Cases**

*ABB Inc. v. Cooper Indus., LLC*,
    635 F.3d 1345 (Fed. Cir. 2011) .......................................................14

*Cuozzo Speed Techs., LLC v. Lee*,
    136 S. Ct. 2131 (2016) ........................................... 3, 10, 11

*Dodocase VR, Inc. v. MerchSource, LLC*,
    767 Fed. App'x 930 (Fed. Cir. 2019) ...........................................8

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*,
    904 F.3d 996 (Fed. Cir. 2018) ....................................................14

*Flex-Foot, Inc. v. CRP, Inc.*,
    238 F.3d 1362 (Fed. Cir. 2001) ................................................8, 9

*Idaho Potato Comm'n v. M & M Produce Farm & Sales*,
    335 F.3d 130 (2d Cir. 2003) .........................................................2

*Kannuu Pty Ltd. v. Samsung Elecs. Co.*,
    No. 1:19-cv-04297-ER, 2021 U.S. Dist. LEXIS 10377 (S.D.N.Y.
    Jan. 19, 2021) ...............................................................................3

*Lear, Inc. v. Adkins*,
    395 U.S. 653 (1969) .......................................................... passim

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ..........................................................................5

*Massillion-Cleveland-Akron Sign Co. v. Golden State Advert. Co.*,
    444 F.2d 425 (9th Cir. 1971) .............................................. 4, 7, 9

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ......................................................................5

*Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*,
    No. 2:19-cv-04980-AB, 2020 U.S. Dist. LEXIS 39732 (C.D. Cal.
    Jan. 23, 2020) ...............................................................................8

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  138 S. Ct. 1365 (2018) ............................................................3, 10

*Pope Mfg. Co. v. Gormully*,
  144 U.S. 224 (1892) ....................................................................4

*Rates Tech., Inc. v. Speakeasy, Inc.*,
  685 F.3d 163 (2d. Cir. 2012) ...................................................7, 9

**Statutes**

35 U.S.C. § 311(a) ...................................................................... 13, 14

**Legislative Materials**

H.R. Rep. No. 112-98 (2011) .............................................................11

**Other Authorities**

*AIA Trial Types*,
  U.S. Pat. & Trademark Off., https://perma.cc/LYS2-4TAH (last
  updated Sept. 10, 2020, 10:28 AM EDT) ....................................12

Aileene Koh, *Using NDAs Before Licensing Discussions*,
  EveryNDA (Nov. 15, 2017), https://perma.cc/7BRJ-66HQ .........................6

AIPLA, *Report of the Economic Survey* (2019) ...................................13

Ariel Soiffer, *NDAs, Confidentiality Provisions and How to Make Sure
  Your IP Stays Yours*,
  TechCrunch (May 15, 2015, 11:00 AM PDT), https://perma.cc/2XVQ-
  B6UN..................................................................................6

Br. Amici Curiae Five Law Professors Supp. Appellant, ECF No. 22 ..............15

*Chat with the Chief: An Analysis of Multiple Petitions in AIA Trials*,
  U.S. Pat. & Trademark Off. (Oct. 24, 2017), https://perma.cc/C3NM-
  HRMU ................................................................................11

D. Patrick O'Reilley & D. Brian Kacedon, *Drafting Patent License
  Agreements*
  (8th ed. 2015)...................................................................15

Federico Caviggioli & Elisa Ughetto, *The Drivers of Patent Transactions: Corporate Views on the Market for Patents*, 43 R&D Mgmt. 318 (2013) ............................................................6

Fish & Richardson, *A Guide to Patent Litigation in Federal Court* (Lawrence K. Kolodney ed., 2019) ............................................................12

*IPRs: Balancing Effectiveness vs. Cost*, RPX Corp. (June 17, 2016), https://perma.cc/H2VS-36TP .........................13

John M. Bird & Margaret M. Welsh, *Strategic Considerations Before Filing an IPR*, A.B.A.: Landslide (Nov./Dec. 2014), https://perma.cc/YKN3-KSUD.........12

*PTAB Trial Statistics FY20 End of Year Outcome Roundup IPR, PGR, CBM*, U.S. Pat. & Trademark Off. (2020), https://perma.cc/8LDD-836R..............12

Scott McBride, *Why Patent Litigation Costs Appear to Be Going Down*, Law360 (Sept. 30, 2019, 3:32 PM EDT), https://perma.cc/537V-72DJ.......13

*Stanford NPE Litigation Database*, Stan. L. Sch., https://perma.cc/ETP6-BSF9 (last visited Apr. 23, 2021)......12

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae*[2] are eighteen law professors at universities throughout the United States. These professors have no personal interest in the outcome of this case, but they have a professional interest in seeing patent law develop in a way that incentivizes innovation without unduly restricting competition or constricting the public domain.[3]

## SUMMARY OF ARGUMENT

This Court should affirm the decision below based on the district court's correct interpretation of New York contract law. In the alternative, *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), provides the Court with independent—and compelling—grounds for affirmance. If the Court rejects the district court's interpretation of the parties' agreement ("Agreement"), *Lear* dictates that the Agreement's forum selection clause cannot preclude *inter partes* review ("IPR") as a matter of public policy.

---

[1] All parties have consented to the filing of this brief. No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting this brief.

[2] A full list of *amici* can be found in the Appendix.

[3] *Amici* thank Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic Certified Law Students Alexander Evelson and Matthew Krantz for their substantial assistance in drafting this brief.

Under *Lear*, a forum selection clause in a nondisclosure agreement ("NDA") cannot presumptively preclude validity challenges via *inter partes* review. Where parties attempt to restrict validity challenges by contract, courts must "weigh the federal policy embodied in the law of intellectual property against . . . contractual provisions and render unenforceable those provisions that would undermine the public interest." *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003) (citing *Lear*, 395 U.S. 653). Given the ubiquity of NDAs and their significance in early business negotiations, permitting boilerplate NDA forum selection clauses to bar IPR proceedings would frustrate the "strong federal policy favoring free competition in ideas which do not merit patent protection" to an even greater degree than in *Lear*. 395 U.S. at 656. Kannuu asserts no countervailing interests that can overcome these concerns.

Extending forum selections in NDAs to presumptively foreclose *inter partes* review is not only bad law; it is also bad policy. Doing so would both limit the ability to file socially valuable IPR petitions and conflict with the America Invents Act ("AIA"). In the AIA, Congress adopted a strong policy favoring validity challenges before the Patent Trial and Appeal Board ("PTAB"). Significantly limiting such challenges would contravene the AIA's mission of protecting "the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope" through the efficient review of patents. *Oil*

2

*States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016)). Because parties sign NDAs as part of their information-gathering processes, allowing forum selection clauses in NDAs to bar IPR proceedings would also cut off PTAB access for the businesses best suited to challenge patent validity.

In light of these legal and policy considerations, this Court should affirm the district court's decision. NDA forum selection clauses cannot bar parties from IPR proceedings absent a compelling countervailing interest. At the very least, that requires a clearly stated and explicitly negotiated provision foreclosing PTAB review not contained in a standard-form contract. There is no such explicit provision here.

## ARGUMENT

As a threshold matter, this Court can affirm the district court's decision on the narrow ground that its interpretation of the Agreement's language—that the NDA is "not directly 'connected with' or 'associated' with . . . IPR proceedings" and therefore should not be read to foreclose those proceedings—is correct. *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 1:19-cv-04297-ER, 2021 U.S. Dist. LEXIS 10377, at *13 (S.D.N.Y. Jan. 19, 2021). Even if this Court rejects that interpretation, it should nevertheless affirm the district court's refusal to bar *inter partes* review on both doctrinal and policy grounds.

I.    **Absent Compelling Countervailing Interests, a Boilerplate Forum Selection Clause in an NDA Cannot Preclude Validity Challenges via *Inter Partes* Review.**

The Supreme Court's decision in *Lear* requires courts to consider the demands of federal patent law when enforcing contracts that bear on validity challenges. *Lear*, 395 U.S. 653; *Massillion-Cleveland-Akron Sign Co. v. Golden State Advert. Co.*, 444 F.2d 425, 427 (9th Cir. 1971) (explaining that *Lear* requires lower courts to consider patent policy when enforcing contracts). *Lear* restricts the ability of parties to bar challenges to patents even when they sign a license agreement. It applies even more strongly here, where the underlying agreement does not directly concern patents at all.

The unique characteristics of NDAs magnify the risk that common, boilerplate forum selection clauses will presumptively preclude PTAB validity challenges—an impermissible result under *Lear*. While parties may in certain cases be able to present compelling interests that outweigh patent policy's override of contractual terms, Kannuu has not done so here.

A.    **Expanding Bars to Validity Challenges to Include Forum Selection Clauses in NDAs Would Frustrate Patent Policy.**

"[F]ederal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." *Lear*, 395 U.S. at 668. Because "competition should not be repressed by worthless patents," *id.* at 664 (quoting *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892)), courts have

taken care not to bar validity challenges absent compelling countervailing interests, *see id.* at 672-73. Accordingly, where parties attempt to restrict validity challenges by contract, "the technical requirements of contract doctrine must [typically] give way before the demands of the public interest." *Id.* at 670.

In *Lear*, the Supreme Court overturned the doctrine of licensee estoppel and held that public policy generally protects licensee challenges to patent validity. *Id.* at 671. The *Lear* Court weighed contractual restrictions against patent policy and resolved in favor of the latter, noting that patent policy is "overriding" even with express contractual terms. *Id.* at 671, 673; *cf. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (noting that a "contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy"). The Court subsequently reaffirmed licensees' standing to bring validity challenges even if neither party has breached the contract. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007).

Although previous cases have focused on limitations to validity challenges in the context of patent licenses, the considerations underlying these licensing cases apply to NDAs with even greater force. Addressing license agreements, the *Lear* Court noted that "the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain."

395 U.S. at 670. Unlike licensing agreements, which parties only sign after extensive deliberations, NDAs are often preliminary agreements, and, as here, they frequently make no mention of patents. *See* Aileene Koh, *Using NDAs Before Licensing Discussions*, EveryNDA (Nov. 15, 2017), https://perma.cc/7BRJ-66HQ (advising prospective licensors to sign nondisclosure agreements before licensing discussions). Accordingly, NDAs generally lack (1) any careful negotiation; (2) any explicit language precluding IPR challenges; and (3) any contemplation that, absent such explicit language, a party would be giving up its right to later challenge a patent via *inter partes* review. Because patent owners have incentives to restrict validity challenges in order to protect their monopoly profits, there is a risk that they will use generic NDAs at the outset of discussions to restrict the availability of IPR proceedings.

NDAs are also more ubiquitous than licensing agreements. *See, e.g.*, Federico Caviggioli & Elisa Ughetto, *The Drivers of Patent Transactions: Corporate Views on the Market for Patents*, 43 R&D Mgmt. 318, 319 (2013) ("The volume of market-mediated transactions in patents . . . is currently estimated to be large. . . . Nondisclosure agreements are common to prevent sensitive information from leaking to competitors."); Ariel Soiffer, *NDAs, Confidentiality Provisions and How to Make Sure Your IP Stays Yours*, TechCrunch (May 15, 2015, 11:00 AM PDT), https://perma.cc/2XVQ-B6UN

("Non-disclosure agreements are some of the most common contracts in the business world . . . ."). As a result, extending contractual limitations on patent challenges to NDAs would limit many more parties from challenging the validity of a patent, without even the claimed justification in the license context that the licensee had agreed to benefit from access to the patent. In short, the policy concerns favoring validity challenges after licensing are even more compelling in the context of NDAs.

Wary that parties could creatively sidestep *Lear*, courts regularly invalidate preclusive provisions in patent contracts. See *Massillion-Cleveland-Akron Sign*, 444 F.2d at 427 (finding it "unimportant that . . . the covenant [not to challenge a patent] is part of a settlement agreement" because it would be easy for parties to "couch licensing arrangements in the form of settlement agreements"); *Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 164 (2d. Cir. 2012) (voiding, under *Lear*, a no-challenge clause in a settlement agreement entered after an accusation of infringement but prior to any litigation). Holding that NDA forum selection clauses presumptively preclude *inter partes* review would have the opposite effect: it would enable patent holders to contract around *Lear*, no creativity required. Interpreting forum selection clauses to foreclose PTAB challenges would be equivalent to endorsing implicit "no IPR" clauses when the parties had not even contemplated, much less bargained for, such a limit. Allowing parties to

preclude IPR proceedings in this way would undercut *Lear*'s broad support for validity challenges.

*Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019), does not compel a different result. First, that decision is nonprecedential. Second, *Dodocase* addressed forum selection clauses in licenses and thus did not consider the significantly stronger policy arguments favoring validity challenges for NDAs. This Court need not decide whether that decision (which did not apply *Lear* or discuss existing law) was correct in order to decline to extend it here.

### B.     There Is No Compelling Countervailing Interest Here.

*Lear* dictates that patent policy overrides contractual restrictions on validity challenges absent a compelling countervailing interest. The patent policy interests in this case are strong—especially given that the forum selection clause is in an NDA, not a patent license—and Kannuu provides no compelling reason for the Court to disregard them.

Courts have found compelling countervailing interests only in narrow circumstances, typically when there is a need to ensure that litigation does not arise after the parties reach a settlement agreement. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001); *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. 2:19-cv-04980-AB, 2020 U.S. Dist. LEXIS 39732, at *2 (C.D. Cal. Jan. 23, 2020). In those cases, the courts held that an agreement can preclude IPR

proceedings when that agreement was a direct result of the parties settling litigation over the very patents that might be challenged via *inter partes* review.[4] The Agreement in this case, however, is very different. Indeed, it does not even mention a specific patent. It is merely an NDA, made before litigation, before any licensing agreement (or even any negotiations toward a licensing agreement) occurred. It does not raise the res judicata concerns at issue in *Flex-Foot*, 238 F.3d at 1368-70; thus, *Flex-Foot* and *Nomadix* do not control the decision in this case. While settlement of litigation may be a compelling countervailing interest, it is not an interest at issue here.

If the Agreement here were not simply a routine, boilerplate forum selection clause, but instead included an explicitly stated and bargained-for provision that reflected the parties' clear intention to foreclose *inter partes* review, the situation might be different. In that case, the equities would weigh more heavily in favor of the patent owner, though such an agreement would still not necessarily be enforceable. But the Agreement in this case lacks any such provision. That the forum selection clause appears in a boilerplate NDA apparently drafted by Samsung, *see* JA443-45, does not change this conclusion;

---

[4] Note that this is not sufficient to constitute a compelling interest. If the parties are using settlement to contract around *Lear*, as in *Massillion-Cleveland-Akron Sign*, 444 F.2d at 427, and *Rates Tech.*, 685 F.3d at 164, then courts generally invalidate the relevant provision, settlement notwithstanding.

it would defy logic to conclude that Samsung (the party that would initiate *inter partes* review) intended to bar itself from IPR proceedings without ever saying so.

Because this case involves neither a settlement nor an explicitly stated, bargained-for IPR preclusion clause, Kannuu has not demonstrated countervailing interests sufficient to override the important patent policy favoring validity challenges. And because allowing boilerplate forum selection clauses in NDAs to bar IPR proceedings would drastically limit the availability of such challenges, such a reading is not permissible under *Lear* and such clauses cannot preclude *inter partes* review.

## II. Extending Forum Selection Clauses in NDAs to Foreclose *Inter Partes* Review Would Contravene Public Policy.

When Congress passed the AIA in 2011, it sought to protect "the public's paramount interest in seeing that patent monopolies are kept within their legitimate scope" through the efficient review of patents. *Oil States*, 138 S. Ct. at 1374 (quoting *Cuozzo*, 136 S. Ct. at 2144). Because PTAB proceedings are faster, cheaper, and more limited in scope than district court proceedings, they better achieve the efficient review of patent validity than district court litigation. Allowing routine NDA forum selection clauses to presumptively bar *inter partes* review is thus not only bad law but bad policy. Closing off the PTAB to those seeking to bring validity challenges would contravene Congress's policy

preference favoring administrative "second looks" at patent grants. Moreover, closing off the PTAB based on NDAs would bar those best suited to seek a "second look" from doing so.

## A. With the AIA, Congress Adopted a Strong Policy Favoring Validity Challenges Before the PTAB.

The AIA created *inter partes* review for the express purpose of reviewing and ensuring patent validity. The PTAB does not adjudicate infringement or contract disputes, and Congress did not intend IPR proceedings to supplant district court litigation. *Cf. Cuozzo*, 136 S. Ct. at 2143 (acknowledging that "inter partes review is less like a judicial proceeding and more like a specialized agency proceeding"). Instead, the PTAB takes a narrow approach to assessing patent validity to more quickly determine whether a patent was granted in error. This is consistent with the AIA's broad goals: "providing a more efficient system for challenging patents that should not have issued[] and reducing unwarranted litigation costs." H.R. Rep. No. 112-98, at 39-40 (2011).

In the decade since Congress enacted the AIA, the public has made use of *inter partes* review exactly as intended. The fact that 85% of IPR proceedings have a corresponding district court proceeding, *Chat with the Chief: An Analysis of Multiple Petitions in AIA Trials*, U.S. Pat. & Trademark Off. (Oct. 24, 2017), https://perma.cc/C3NM-HRMU, demonstrates that those accused of patent infringement need and want a more efficient means of determining patent

validity.[5]

Inter partes review is more efficient than litigation. Because PTAB proceedings only address a patent's validity, they take considerably less time to resolve than suits in district court (which may encompass a broad range of complex issues). *Compare AIA Trial Types*, U.S. Pat. & Trademark Off., https://perma.cc/LYS2-4TAH (last updated Sept. 10, 2020, 10:28 AM EDT) (showing that the time it takes from the filing of an IPR petition to the issuance of a written decision does not exceed fifteen months), *with* Fish & Richardson, *A Guide to Patent Litigation in Federal Court* (Lawrence K. Kolodney ed., 2019) (noting that it typically takes one to three years for a patent infringement case to go to trial). As a result, the cost of *inter partes* review is also significantly lower than the cost of district court litigation, often by an order of magnitude. John M. Bird & Margaret M. Welsh, *Strategic Considerations Before Filing an IPR*, A.B.A.: Landslide (Nov./Dec. 2014), https://perma.cc/YKN3-KSUD. Whereas legal fees in litigation can reach $8 million, *id.*, PTAB proceedings cost on average $450,000 and generally cost no more than $750,000, AIPLA, *Report of*

---

[5] Between October 1, 2019 and September 30, 2020, there were 1,429 IPR petitions filed with the United States Patent and Trademark Office. *PTAB Trial Statistics FY20 End of Year Outcome Roundup IPR, PGR, CBM*, U.S. Pat. & Trademark Off. (2020), https://perma.cc/8LDD-836R. There were 3,915 district court proceedings tied to patent infringement within the same period. *See Stanford NPE Litigation Database*, Stan. L. Sch., https://perma.cc/ETP6-BSF9 (last visited Apr. 23, 2021).

*the Economic Survey* I-188 (2019); *see also IPRs: Balancing Effectiveness vs. Cost*, RPX Corp. (June 17, 2016), https://perma.cc/H2VS-36TP (noting that IPRs generally cost between $100,000 and $700,000, with a median of $250,000 for those that result in a written decision). Some reports attribute the recent trend in lower patent infringement litigation costs (at least in part) to *inter partes* review. Scott McBride, *Why Patent Litigation Costs Appear to Be Going Down*, Law360 (Sept. 30, 2019, 3:32 PM EDT), https://perma.cc/537V-72DJ.

Allowing routine NDA forum selection clauses to presumptively bar *inter partes* review would undermine these successful results. Because the PTAB does not initiate *inter partes* review without a petition by "a person who is not the owner of a patent," 35 U.S.C. § 311(a), significantly restricting the ability to file such petitions would undermine the PTAB's ability to carry out its designated role. This would in turn undo the progress brought about by the AIA and cut against the Act's core intent. Congress's explicit choice to increase the efficiency and number of validity challenges is precisely the sort of patent policy that Lear concluded should "overrid[e]" even express contractual terms. *Lear*, 395 U.S. at 671, 673.

### B. Allowing NDAs to Bar *Inter Partes* Review Would Disproportionately Harm the Entities Best Suited to Challenge Patent Validity.

In a perfect world, the ability of any "person who is not the owner of a

patent," 35 U.S.C. § 311(a), to challenge a patent's validity before the PTAB would assuage concerns surrounding NDA forum selection clauses. But the world is far from perfect. Transaction costs abound. Patent validity challenges are expensive. Although the cost of *inter partes* review pales in comparison to the cost of litigation, parties are unlikely to pay the price to invalidate a patent without a sufficient incentive to do so.[6] In cases involving licensing agreements, that incentive typically takes the form of a desire to avoid paying unwarranted licensing fees. *See, e.g.*, *Lear*, 395 U.S. at 655-56. Indeed, *Lear* noted that "[l]icensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery." *Id.* at 670. When there is no licensing agreement, the incentive is even stronger: a desire to avoid being sued for the infringement of an invalid patent.

While patents are publicly accessible, the information required for a party at risk of being sued to determine its exposure is often proprietary. Patent owners have strong incentives to keep the information they hold secret. As a result, parties

---

[6] Even if they did, this Court's precedent bars PTAB challengers from maintaining an appeal in the Federal Circuit unless they can show that they face a significant risk of suit from the patent owner. *See E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1004 (Fed. Cir. 2018) (noting that on appeal "the petitioner must generally show a controversy 'of sufficient immediacy and reality' to warrant the requested judicial relief" even if there was no such requirement at the PTAB (quoting *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011))).

that wish to gain access to the proprietary information required to make determinations about their possible exposure (and need for a license) are often unable to do so without first signing an NDA—likely an NDA with a forum selection clause. Forum selection clauses, like NDAs themselves, are ubiquitous: they are boilerplate provisions in a wide variety of business agreements, including NDAs, assignment agreements, joint development agreements, manufacturing agreements, and sourcing agreements. *See* D. Patrick O'Reilley & D. Brian Kacedon, *Drafting Patent License Agreements* ch. 23 (8th ed. 2015) (characterizing choice of law and forum provisions as "so common that such provisions are included in many contracts without regard for their purpose or effect").

If this Court were to allow these routine provisions to bar patent validity challenges before the PTAB, it would give patent owners the ability to systematically foreclose PTAB proceedings by parties with the best information and best motivation to challenge patents. If the parties with the incentive and knowledge to bring these challenges before the PTAB are barred from doing so,[7] Congress's explicit policy goals for the PTAB—facilitating challenges to

_____

[7] Although Kannuu's *amici* note that "the PTAB routinely gives no consideration to forum-selection clauses when deciding to institute a post-grant proceeding," *see* Br. Amici Curiae Five Law Professors Supp. Appellant 12 n.3, ECF No. 22, should Kannuu win this case, patent owners will invariably ask district courts to stay or enjoin such proceedings based on forum selection clauses.

invalidate bad patents—will be substantially undermined. Absent long and costly litigation, invalid patents will persist, diminishing the public's confidence in the patent system and restraining competition.

The Supreme Court emphasized the importance of weeding out invalid patents in *Lear*. Congress did the same in the AIA. Parties have relied on *Lear* to bring validity challenges—and the AIA to do so efficiently—in order to keep patent monopolies confined to their proper scope. Presumptively applying NDA forum selection clauses to *inter partes* review would upend the law and established practice, with the most detrimental effect on those best equipped to challenge patent validity. This Court should reject the law and policy harms that would result from extending forum selection clauses and hold that absent a compelling countervailing interest—at least a clearly stated and explicitly negotiated contractual term foreclosing access to the PTAB not contained in a standard-form contract—parties to NDAs with forum selection clauses cannot be barred from seeking *inter partes* review.

## CONCLUSION

For the foregoing reasons, amici respectfully urge this Court to affirm the decision below.

April 28, 2021

Respectfully submitted,

By: /s/ Phillip R. Malone

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY AND
    INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
Tel: (650) 725-6369
jipic@law.stanford.edu

*Attorney for Amici Curiae*

# APPENDIX

*Amici curiae* law professors are listed below. Affiliation is provided for identification purposes only. All signatories are participating in their individual capacity, not on behalf of their institutions.

**Professor Margo A. Bagley**
Emory University School of Law

**Professor Jeremy W. Bock**
Tulane University Law School

**Professor Dan L. Burk**
University of California, Irvine School of Law

**Professor Michael A. Carrier**
Rutgers Law School

**Professor Rochelle C. Dreyfuss**
New York University School of Law

**Professor Samuel F. Ernst**
Golden Gate University School of Law

**Professor William T. Gallagher**
Golden Gate University School of Law

**Professor Shubha Ghosh**
Syracuse University College of Law

**Professor Leah Chan Grinvald**
Suffolk University Law School

**Professor Erik Hovenkamp**
USC Gould School of Law

**Professor Mark A. Lemley**
Stanford Law School

**Professor Orly Lobel**
University of San Diego School of Law

**Professor Brian J. Love**
Santa Clara University School of Law

**Professor Stephen McJohn**
Suffolk University Law School

**Professor Michael J. Meurer**
Boston University School of Law

**Professor Shawn Miller**
University of San Diego School of Law

**Professor Tyler T. Ochoa**
Santa Clara University School of Law

**Professor Christopher M. Turoski**
University of Minnesota Law School

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2021, I caused the foregoing **BRIEF OF**

*AMICI CURIAE* **INTELLECTUAL PROPERTY LAW PROFESSORS IN**

**SUPPORT OF APPELLEES** to be served by electronic means via the Court's

CM/ECF system on all counsel registered to receive electronic notices.

April 28, 2021                             /s/ Phillip R. Malone

                                        Phillip R. Malone
                                        JUELSGAARD INTELLECTUAL PROPERTY
                                          AND INNOVATION CLINIC
                                        Mills Legal Clinic at Stanford Law School
                                        559 Nathan Abbott Way
                                        Stanford, CA 94305-8610
                                        Tel: (650) 725-6369
                                        jipic@law.stanford.edu


                                        *Attorney for Amici Curiae*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify as follows:

1.     The foregoing **BRIEF OF *AMICI CURIAE* INTELLECTUAL PROPERTY LAW PROFESSORS IN SUPPORT OF APPELLEES** complies with the type-volume limitation of Fed. R. App. P. 32(a) and Fed. Cir. R. 35(g), as in effect of this case's docketing date. The brief is printed in proportionally spaced 14-point type, and the brief has 3,719 words according to the word count of the word-processing system used to prepare the brief (excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)).

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

April 28, 2021                          /s/ Phillip R. Malone
                                               Phillip R. Malone

                                               *Attorney for Amici Curiae*